Good morning, and welcome to the Court of Appeals for the Sixth Circuit. Judge SirHeinrich and I are very pleased to have sitting with us today Judge Matthew Lightman from the Eastern District of Michigan. Judge Lightman, thank you so much for joining us and helping us with our docket. Before we begin, I wish to assure you that the panel is prepared for your cases this morning. We have read your briefs. Because we are prepared, we would prefer it if you would please spend your time not reciting the statement of facts in your case, but rather arguing the most critical issues. We will assume that issues that are not argued today that you rely upon the arguments contained in your briefs. Finally, if you are counsel for the appellant and wish to reserve some time for rebuttal, please so indicate to me and to our court officer. With that, you may call the first case. Case number 14-5505, Michelle Shoemaker, Brenda Jones. Oral arguments have to be 15 minutes per side. This is an answer from Judge Lightman. Good morning. Good morning, Your Honor. Court please, with your permission, I'd like to reserve, should it be necessary for rebuttal, two minutes. Two minutes. Very well. Counsel. The petitioner in this case, Ms. Michelle Shoemaker, the least culpable individual of four individuals found guilty of the murder of James Kerr, received the most severe sentence. Dean Shoemaker, her husband, a man by the name of Fouch, her family friend, and her mother all received sentences much lighter than Ms. Shoemaker. Ms. Shoemaker was sentenced to life in prison without the possibility of parole for at least 51 years. How could that happen? It happened because trial counsel for Ms. Shoemaker failed to provide her at the plea stage with an informed opinion as to what plea ought to be entered given what he knew about that case. At the time of the trial, counsel for Ms. Shoemaker had been offered a plea for 15 years to settle the case. And before ever consulting with Ms. Shoemaker, he rejected it out of hand. And I suggest to you what's odd about that is at the post-conviction hearing, testimony by trial counsel was that there was a 15-year offer made that he found to be favorable. Well, if the 15-year sentence was favorable, why then reject it offhand right off the bat before you talk to the client? And I think what is important about that conduct on the part of counsel was what message did that send to the client? Before any conversation at all about a plea to her, he said, 15, don't want it. And the record is clear. Ms. Shoemaker, in essence, was a virgin in this criminal justice system. No criminal history whatsoever. No indication that she'd ever had any contact with lawyers, law enforcement, criminal justice. So she relied heavily on trial counsel. And at the post-conviction hearing, clearly it was shown, stated that, look, here was trial counsel, reputable in the area. I relied on him. What strikes me as being strange here and worthy, I think, of at least some consideration on the part of the court is this. You've got counsel who says at the post-conviction hearing, well, what did you think about this case? How did you feel about the case? Counsel said, well, I didn't have a belief one way or the other. I thought it was going to be close. Now, you have to ask yourself, how on earth, first of all, could a trial lawyer, getting ready to go to trial, in a criminal case, and in particular a murder case, say- His testimony was a little different than that, wasn't it? I'm sorry, Your Honor. His testimony at the hearing was a little different as to what he advised your client to do. That's correct. And the judge credited his testimony over that of your client. Yes, Your Honor. So what do we do with that? What I'm suggesting to Your Honor is this. Yes, the post-conviction court and Tennessee Court of Criminal Appeals credited the testimony of trial counsel over that of Ms. Shoemaker. I'm suggesting to you that that was a decision on the part of the post-conviction court as well as Tennessee Court of Criminal Appeals that was unreasonable in light of the facts that were reduced at the post-conviction hearing. One of the things that was never discussed in the findings of the post-conviction court as well as Tennessee Court of Criminal Appeals was the testimony of co-counsel Harris. It was the testimony of co-counsel Harris that I suggest to you supported Ms. Shoemaker's version of what was going on in this case. Mr. Gantt- Yes, sir. Cite for us as specifically as possible the exact testimony by Mr. Harris that you're suggesting was the undeniable balance tipper between Shoemaker and Sadler. I believe that I can, Your Honor. I believe in your brief you cited to record ID 1202 and 1203, page 52 and 53 of the transcript. Is there anything beyond that that you would point to as this undeniable balance tipper? No, sir. No, sir. That's probably the most solid evidence that I could point to, Your Honor. But what's- have I answered your question? I'm sorry. What I find most striking is Ms. Shoemaker, like any other client, has a right to have counsel who can offer an informed opinion. If counsel says, I had no belief one way or the other, but I thought it was going to be close, it strikes me as a little incredulous that, one, in a murder case, you have no belief one way or the other. And if you have no belief one way or the other, how on earth are you going to be in a position to inform a client as to the best approach in the case? So it's a little incredulous for the lawyer to say, I had no belief one way or the other, but it was going to be close. To say it was going to be close is to render an opinion. It is interesting that counsel would say that I thought it might be close when at the time this case went to trial, counsel knew that Ms. Shoemaker had made at least four statements, all of which contained some bit of information that was incriminating. He likewise knew that the husband and the family friend had entered pleas of guilty and were going to testify against Ms. Shoemaker. He likewise knew that there was at least one taped telephone conversation wherein Ms. Shoemaker made again some incriminating statements and he had to deal with the fact that she had fled. Given that information, how could any lawyer seriously say the case was going to be close? Didn't he say that at least on the eve of trial he wasn't telling her this idea that it was going to be particularly close? I'm looking at page ID 1173 of Sadler's testimony when he learns about the last tape and he uses terms like this really hurts our case, I think we need to get a continuance. Even if we credit what you're saying that early on he has a too rosy picture, isn't his testimony at the post-conviction hearing clearly delivering the message that he has changed his view? It certainly could be read to say that, Your Honor, but I think what undercuts that is, again, it's the corroboration or at least support that counsel Harris' testimony lends to this. Harris got involved in the case roughly two months, two months before the case actually went to trial. And at that point, and Harris' testimony at the post-conviction hearing, at that point he, Harris says, and I'm going to try and quote the words, that both counsel for Ms. Shoemaker and Ms. Shoemaker had unrealistic hopes about this case. So even if you credit what trial counsel for Ms. Shoemaker said at the post-conviction hearing, I suggest to you it's at least Harris also said that Shoemaker, quote, wanted to go to trial, end of quote, and, quote, had unrealistic hopes, end of quote, of success. Yes, sir. But I suggest to you, Judge, that even if Shoemaker wanted to go to trial, Shoemaker is relying upon this seasoned trial lawyer with the reputation of being a very fine lawyer and, again No, I was trying to answer your argument that Harris makes your case. And I'm saying with him testifying that way, he doesn't make your case. And it seems to me we're back to the same situation and the trial judge ruled that he found the lawyer was more credible than your client. Yes, Your Honor. So where are you? We're back at the situation where basically the post-conviction court, Tennessee Court of Criminal Appeals, and the federal district court said we believe it's a tie. It's a tie and the trial judge has the discretion to decide who to believe. They believe the lawyer. And what I'm saying to Your Honor is I believe that that was unreasonable in light of the testimony of Mr. Harris, which, in essence, was ignored. I just read you Mr. Harris' testimony and it doesn't sound like it's one-sided for your client. Well, one of the things that maybe I'm misreading and maybe it's my advocacy, but what I read Harris is saying is, look, this woman, Ms. Shoemaker, relied upon trial counsel. Trial counsel led her to believe that he could win this case. She relied upon that. He said that. Harris said that at the post-conviction hearing. And he likewise said at that post-conviction hearing that at the time that they were getting ready to go to trial, he believed the testimony was overwhelming and that, at that time, trial counsel had an unrealistic hope about the case. I think that that undercuts the version and tends to corroborate the version of Ms. Shoemaker as opposed to that of trial counsel. I have nothing further, unless there are questions to the court. Anything further? No. All right. Thank you. We'll have your two minutes rebuttal, Mr. Gant. Thank you very much, Your Honor. Appreciate it. Good morning. Good morning. May it please the court. John Bledsoe on behalf of the respondent. In this case, the claim, the ineffective assistance of counsel claim that was raised and preserved in state court is that counsel failed to honestly communicate with the petitioner about her case. That is the issue. That is the discrete issue that was presented as now before the court. Communicate as opposed to failure to give a competent recommendation? Actually, the claim as it was raised in state court was failure to honestly communicate. We're limited to what they've raised in state court, are we not? Yes. Yes, Your Honor. And essentially, and I think the court has from colloquy with counsel, I think the court understands the record. The state court looked at the disputed proof between the petitioner and trial counsel and accredited his testimony over hers. Now, on that particular issue, the failure to honestly communicate, looking at the petitioner's testimony, there's basically three facts she testified to that go toward that claim. She testified that counsel told her this was a piece of cake. She testified that counsel told her the night before trial she would be acquitted and not to worry about the recorded conversations that were going to be admitted at trial. And she testified that he told her to reject the 15-year deal. He testified to the contrary on those points. And his proof was accredited. Now, so what's before this court is essentially a fact credibility issue. And the petitioner has to establish, by clear and convincing evidence, a basis to overcome the presumption of correctness that attaches to the state court findings. He says, brother counsel says, that clear and convincing evidence is this independent Mr. Harris testimony. Yes, Your Honor. That is correct. And my response to that is Mr. Harris's testimony doesn't inform those three particular facts one way or the other. And if I may just specifically read, because it's basically two sentences. And these are on page ID numbers 1202 and 1203 that Your Honor referenced, where he's discussing in his testimony a meeting during the week before trial, which is when he first met the petitioner and became involved in the case. And there was a brief discussion about whether she should take the plea. She did not want to take the plea. And he said, we briefly touched on it, and she wanted to go to trial. I think she had unrealistic hopes. But I thought both of them, and this is a little criticism of Edwin, I thought, boy, we're going to have to get lucky because some of this evidence is overwhelming. I'm trying to think of what else did I, I forgot your question. So what he said was she had unrealistic hopes. Not that she and trial counsel. She had unrealistic hopes. And then he started to make a comment about what he thought something about both of them, but then he didn't finish the comment. I think even giving that the most charitable view that it would seem that maybe his view of the case was different from trial counsel. Counsel testified he thought they had a chance. This lawyer, appellate lawyer, also testified. You always have a chance, don't you? Well, that they had an argument. And in fact, appellate counsel testified their hook, to the extent they had a hook, and that was the word he used, was the conclusion of her fourth statement that she gave to law enforcement officers where she stated that she thought she did not take them seriously. And both counsel agreed that was their argument. But from the position trial counsel was in, he had overwhelming evidence that the state was going to present to establish her guilt. And he had a client who was adamant that she was innocent. That she never believed them, she was not part of their agreement, and she should not be held criminally responsible. Now counsel had an obligation to honestly communicate with her. I don't dispute that. But my point here on this fact issue is that sentence from Harris doesn't inform one way or the other whether he gave her false information, or dishonest information, or incomplete information. The issue that was raised in state court and is preserved for review is squarely a credibility issue between those two. And his statements here don't trump that one way or the other or corroborate what she's saying on those particular points. It's that reason that we believe the petitioner cannot overcome the presumption of correctness to these factual findings. And based upon the accredited testimony by counsel that he conveyed the offer to her, he went over the case and the evidence with her, that he left it for her decision whether to make... Does counsel have an obligation under the Sixth Amendment to make a recommendation to the client whether she should accept or reject an offer? I don't believe so, Your Honor. Is there any clearly established federal law as established by the holdings of the Supreme Court on that issue? No. Not that I'm aware of. Not at the time of this trial. That he was required to urge her one way or the other. Make a recommendation. Or even to make a recommendation. If we're saying that he violated his responsibilities under the Sixth Amendment, we almost have to find a Supreme Court case that says that. That's correct. Clearly established precedent by the holdings. When's the last reversal on an issue of unreasonable application of facts case in the habeas setting? I'm not aware of one. It's a difficult... Or the last one the Supreme Court affirmed, I guess. Yes. The Supreme Court's been pretty tough on these habeas cases. That's correct. And of course it's based on the language specifically of 2254E about how we regard the factual findings by the state court. And under Penholster, we're limited to what was presented in state court. Unless the court has further questions, we ask the court to affirm the judgment of the district court. All right. Any further questions? Judge Sir Heinrich? Nope. Thank you, Your Honor. All right. Thank you, Mr. Bledsoe. Mr. Gant, you've got two minutes rebuttal. I have no rebuttal. All right. Thank you very much. I appreciate your arguments. Case will be submitted. May call the next case.